No. 85,486

In the Matter of MICHAEL M. MORAN, *Respondent*.

(13 P.3d 1275)

Opinion filed December 8, 2000.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, and *Edwin A. Van Petten*, deputy disciplinary administrator, were on the formal complaints for petitioner.

No appearance by respondent.

*Per Curiam*: This is an original proceeding in discipline against the respondent, Michael M. Moran, an attorney admitted to the practice of law in Kansas, whose last known business address is Olathe, Kansas. There are four separate cases, Nos. DA7264, DA7430, DA7490, and DA7730. Highly summarized, the complaints against the respondent are as follows:

## I. DA7264

The respondent filed a lawsuit seeking to enforce covenants governing minimum square footage of homes built in a subdivision. He named 89 individuals as plaintiffs. He had had absolutely no contact with 88 of the individuals. None of the 88 plaintiffs was aware that a petition had been filed in their behalf. In addition to an answer, a counterclaim was filed against all 89 plaintiffs. The respondent failed to notify any of the 89 plaintiffs that a counterclaim had been filed against them. Eventually, the plaintiffs became aware of the pending litigation. Some plaintiffs hired their own attorneys and one entered an appearance on his own behalf.

Eventually, the case was concluded and a complaint was filed against the respondent. The respondent failed to cooperate with the investigation.

## II. DA7430

The respondent represented two tenants who had leased a premise based on the landlord's promise to fix certain plumbing and electrical problems. When the problems were not remedied,

the tenants refused to pay the rent according to the lease. The landlord filed a forcible detainer action. The respondent was employed to represent the tenants. The respondent told the tenants he had entered his appearance by telephone and that the court would notify him of the trial setting. Default judgment was taken when the respondent failed to answer or appear. Default judgment was later set aside. The tenants were never able to contact the respondent, despite repeated efforts. The case is still pending in Johnson County.

One of the tenants filed a complaint, and the respondent failed to cooperate with the disciplinary administrator's office in that he did not answer any correspondence. The matter was subsequently docketed and referred for investigation. The respondent did not cooperate with the investigator; although he did at one time meet with the investigator and promised to furnish the requested material, that material was not forthcoming.

## III. DA7490

The respondent conducted an estate planning seminar. Robert and Betty Kaps employed him to create living trusts for the purpose of avoiding probate. The respondent gathered information from them and received one-half of his fee. He did not enter into a written agreement or provide an engagement letter confirming the verbal arrangement.

Following the initial meeting, the respondent drafted 2 living trusts, 2 wills, 12 durable power of attorney documents, 2 living wills, and a tenancy agreement.

On October 11, 1996, Mr. and Mrs. Kaps again met with the respondent. At that time, Mrs. Kaps paid the respondent the second half of his fee. At that meeting, the respondent assured Mr. and Mrs. Kaps that he would take the necessary steps to transfer the assets to the trusts.

While the respondent never transferred any assets into the trusts, Mr. and Mrs. Kaps did manage, on their own, to transfer two vehicles into the trusts.

In the 2 years following the October 11, 1996, meeting, Mr. and Mrs. Kaps tried on approximately 10 occasions to contact the re-

spondent but were unsuccessful. The respondent repeatedly failed to return telephone calls to Mr. and Mrs. Kaps. Finally a meeting was scheduled in July 1998. Mr. Kaps and his son waited for 90 minutes in the respondent's office. The respondent did not appear at the scheduled meeting. Thereafter, a meeting was scheduled for August 18, 1998. Mr. and Mrs. Kaps brought a list of assets that needed to be transferred into the trusts. The respondent assured Mr. and Mrs. Kaps that he would transfer the assets in the following days. The respondent again failed to transfer the property. Then 5 or 6 months later, Mr. and Mrs. Kaps again contacted the respondent. Again, the respondent promised that he would transfer the assets into the trusts for Mr. and Mrs. Kaps, but failed to do so.

On February 10, 1999, Mr. and Mrs. Kaps forwarded a letter of complaint to the Disciplinary Administrator's office. On February 24, 1999, Edwin Van Petten, a deputy disciplinary administrator, sent a letter to the respondent notifying him that the complaint had been received and docketed for investigation and requesting that the respondent forward a written response to the complaint. Thereafter, Clifford A. Cohen was assigned to investigate Mr. and Mrs. Kaps' complaint.

During the course of Cohen's investigation, Cohen contacted Mr. and Mrs. Kaps. Cohen asked Michael R. Ong, an estate planning attorney, to review the documents that the respondent had prepared for Mr. and Mrs. Kaps. As a result of his review, Ong prepared a memo to Cohen which stated:

"After my review and discussion with the Kaps it is clear that the sole purpose for which the Kaps sought estate planning services, namely arranging their affairs so as to have their assets administered without the need for probate proceedings, was not achieved by the work done by the attorney they had hired. In addition, it was established that the estate plan documents as prepared do not and did not reflect their intentions.

. . . .

"Further, in terms of probate avoidance the work performed by the Kap's attorney may have placed Mr. and Mrs. Kaps in a worse position than if they had not sought any legal services. This is due to a document entitled 'Tenancy Agreement.'"

Ong recommended that Mr. and Mrs. Kaps establish an entirely new estate plan to reflect their intentions and accomplish their goals.

After Mr. and Mrs. Kaps learned of Ong's opinions and recommendations, Mr. and Mrs. Kaps asked Ong if he would provide them with estate planning services. After being assured by Cohen that it was not inappropriate to provide such services, Mr. and Mrs. Kaps hired Ong to prepare the necessary documents. Unfortunately, Ong was not able to utilize any of the documents prepared by the respondent because it would have taken longer to correct the inadequacies of the existing documents than to start from the beginning. Ong transferred Mr. and Mrs. Kaps' assets into the trusts and their estate plan is in place.

On March 19, 1999, Cohen wrote to the respondent asking him to provide various documents and a written response to the complaint by April 5, 1999. The respondent did not comply with Cohens requests. Then, on April 5, 1999, Cohen telephoned the respondent regarding the matter. At that time, the respondent informed Cohen that he had not recently checked his business post office box. The respondent assured Cohen that he would do so and promptly comply with his requests. Again, the respondent did not comply with Cohen's requests. On April 19, 1999, Cohen again wrote to the respondent, but he did not reply. On May 5, 1999, Cohen wrote to the respondent for a third time and provided him with additional time to comply with Cohen's requests. The respondent did not comply.

### IV. DA7730

On November 5, 1997, we suspended the respondent pursuant to Supreme Court Rule 806 (1999 Kan. Ct. R. Annot. 534) for failing to fulfill the minimum Continuing Legal Education (CLE) requirements, for failing to pay the annual CLE fee, and for failing to pay the late fee.

After being suspended, the respondent did not notify his clients, opposing counsel, or the courts of his suspension.

On November 5, 1997, the CLE Commission forwarded the notices required by Supreme Court Rule 806(b) to the respondent, return receipt requested.

At that time, the respondent was leasing office space from Mc-Dowell, Rice, Smith & Gaar. In addition to the office space, the respondents agreement with McDowell, Rice, Smith & Gaar included receptionist and mail services. The receptionist, Lori Sneed, received the notice of suspension and signed the return receipt. It was Sneed's practice to place all mail in the respondents chair.

The respondent testified that he did not receive the notice that his license to practice law was suspended. As an excuse, the respondent testified that he was in the process of moving into the McDowell, Rice, Smith & Gaars office at the time the notice was sent and the notice must have been lost in the move. The respondent moved into the office during the first few days of August 1997. The notice of suspension was not sent until November 1997—3 months later.

On August 17, 1999, David Wood, an investigator with the Disciplinary Administrator's office, personally contacted the respondent. Wood informed the respondent that he had been suspended from the practice of law in the state of Kansas in November 1997. Wood instructed the respondent that he could no longer practice law.

After Wood personally informed the respondent that he had been suspended from the practice of law, the respondent did not notify his clients, opposing counsel, or the courts of his suspension.

The respondent admitted that he continued to practice law from November 1997, until notified of the suspension by Wood on August 17, 1999. In addition to the respondent's stipulation, ample evidence in the record supports the finding that the respondent continued to practice law after November 5, 1997. Some of that evidence is detailed in the hearing panel's findings of fact:

"(1) While the Respondent filed the Petition for Declaratory Judgment and Injunctive Relief in *Frank Carroll, et al., vs. Mike Welch Builder, Inc.,* Johnson County District Court case number 97C11275, in August, 1997, before suspension, the litigation continued after the Respondent's suspension. In fact, the Respondent appeared in the Johnson County District Court on January 29, 1998, in that case. On that same date, the Respondent filed a Reply to Motion to Dismiss Petition and for Default Judgment and a Motion for Leave to File Responsive Pleading Out of Time and Motion for Continuance of Hearing and for Pretrial Conference.

"(2) All of the Respondent's representation of Ms. Peterson, Ms. Johns, and Ms. Audley in connection with their dispute with Mr. Chawla occurred after the Respondents suspension.

"(3) Mr. and Mrs. Kaps hired the Respondent prior to his suspension. And, much of the work that the Respondent did perform occurred prior to his suspension. However, some of the Respondent's work in relation to Mr. and Mrs. Kaps occurred after November 5, 1997. After his suspension, the Respondent continued to meet with, and provide legal advice to Mr. and Mrs. Kaps.

"(4) In behalf of Richard R. Admire, on April 23, 1998, the Respondent filed an Order of Extension of Time to Answer in *Beneficial Mortgage Co. of Kansas vs. Richard R. Admire,* Johnson County District Court case number 98C03686.

"(5) On June 21, 1999, in behalf of Brien L. Heinen, the Respondent filed a Petition in *Brien L. Heinen vs. Nicole R. Williams,* Johnson County District Court case number 99C07938.

"(6) On February 13, 1998, the Respondent filed a Petition for Divorce in behalf of Wanda Kay Vowell, Wyandotte County District Court case number 98D732, *In re Marriage of Wanda Kay Vowell and Robert L. Czirr.* Additionally, the Respondent continued to represent Ms. Vowell throughout the divorce action."

On the same day that Wood personally informed the respondent that he was suspended (August 17, 1999), Hassan Ghaicepour contacted the respondent, requesting that he prepare and file articles of incorporation with the State of Tennessee. The respondent accepted a retainer of $500 and filing fees of $117, and provided legal services to Ghaicepour.

Prior to being suspended in November 1997, the respondent accepted a retainer of $1,500 from Betty Meyers, a Missouri resident. The retainer was to draft and establish a trust in her behalf. After paying the retainer, Meyers was unable to locate the respondent for a period of 2 years. In an attempt to locate him, Meyers contacted the bar officials in the state of Missouri and learned that the respondent was not a licensed Missouri attorney. At some point, the respondent and Meyers re-established communication. On February 5, 2000, the respondent went to Meyers' house to provide legal advice. Additionally, on February 8, 2000, at 10:35 p.m. (the night before the hearing began), the respondent telephoned Meyers regarding the estate plan.

In conjunction with ongoing litigation, on January 10, 2000, the respondent sent, *via* facsimile, settlement documents to attorney

Kenton E. Snow. The communication was designed to settle the litigation.

In the weeks prior to the hearing on this matter, the respondent attended several CLE courses. On February 8, 2000, the respondent presented himself at the office of the CLE Commission. The respondent provided four affidavits of CLE attendance and paid the necessary fees. Additionally, on February 8, 2000, the respondent paid the necessary fees at the office of the Clerk of the Appellate Courts. Accordingly, on February 10, 2000, the respondent's license to practice law was reinstated.

Based upon the above, the hearing panel made the following conclusions of law:

"1. In this case, the Continuing Legal Education Commission, in November, 1997, provided service to the Respondent of notice of suspension in accord with the applicable rules. Kan. Sup. Ct. R. 224(b) provides, '[e]xcept as otherwise provided, the Rules of Civil Procedure apply in disciplinary cases.' [Citation omitted.] Also, Kan. Sup. Ct. R. 215(b) specifically provides for service in disciplinary cases. 'Service of any other papers or notices required by these Rules may, unless otherwise provided, be made in accordance with K.S.A. 60-205.' " [Citation omitted.] K.S.A. 60-205(b) provides, in pertinent part, as follows:

'*How made.* Whenever under this article service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by: (1) Delivering a copy to the attorney or a party; (2) mailing it to the attorney or a party at the last known address; (3) if no address is known, by leaving it with the clerk of the court; or (4) sending or transmitting to such attorney a copy by telefacsimile communication. . . . Service by mail is complete upon mailing. . . .'

Citing Kan. Sup. Ct. R. 224(b) and K.S.A. 60-205(b), the Kansas Supreme Court, in *In re Lewis*, 265 Kan. 766, 777, 962 P.2d 534, 542-43 (1998), confirmed that service of disciplinary papers or notices by mail is complete upon mailing. [Citation omitted.] In this case, the CLE Commission sent *via* certified mail, a copy of the order suspending the Respondent's license to practice law. The notice was sent to the Respondent's office address and was received and signed for by the receptionist of that office. Accordingly, the Hearing Panel concludes that the Respondent received adequate notice that his license was suspended in November, 1997.

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' [Citation omitted.] In the case numbered DA7490, the Respondent failed to represent Mr. and Ms.

Kaps competently. Specifically, the Respondent drafted and Mr. and Mrs. Kaps executed a document entitled, Tenancy Agreement. The credible evidence disclosed that that 'may have placed Mr. and Mrs. Kaps in a worse position than if they had not sought any legal services.' [Citation omitted.] Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3. Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. Because the Respondent failed to act with reasonable diligence and promptness in representing Ms. Peterson, Ms. Johns, Ms. Audley (DA7430), and Mr. and Mrs. Kaps (DA7490), the Respondent violated KRPC 1.3.

a. The Respondent failed to diligently represent Ms. Peterson, Ms. Johns, and Ms. Audley in their dispute with Mr. Chawla. The Respondent never took any steps toward resolving the dispute over the water bill. Additionally, the case continues to languish in the District Court of Johnson County, Kansas. No action in that case has occurred since April 2, 1998.

b. After the Respondent drafted the estate plan documents, the Respondent took no steps toward making the documents effective. In order for the living trusts to have any significance, Mr. and Mrs. Kaps assets must have been transferred into the trusts. During the two years that the Respondent represented Mr. and Mrs. Kaps, he did not transfer any property into the trusts.

"4.   KRPC 1.4(a) provides:

'A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

Because the Respondent failed to keep the plaintiffs in DA7264, Ms. Cressman, Ms. Peterson, Ms. Johns, Ms. Audley, (DA7430), and Mr. and Mrs. Kaps (DA7490) reasonably informed about the status of his representation, the Respondent violated KRPC 1.4.

a. Throughout the litigation captioned *Frank Carroll, et al., vs. Mike Welch Builder, Inc.,* the Respondent failed to communicate with his 'clients.' Specifically. by failing to inform the plaintiffs that a counterclaim had been filed against them, the Respondent failed to keep his 'clients' reasonably informed about the status of his representation.

b. On numerous occasions, Ms. Cressman and Ms. Peterson attempted to contact the Respondent by telephone to learn of the status of their case. The Respondent repeatedly failed to return telephone calls. Additionally, the Respondent never informed his clients that a default judgment had been entered against them, nor did the Respondent inform his clients that he was successful in getting the default judgment set aside. For those reasons, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

c. For a period of two years, Mr. and Mrs. Kaps attempted to contact the Respondent regarding the status of the transfer of assets. The Respondent repeatedly failed to return their telephone calls. Additionally, the Respondent failed to keep a scheduled appointment with Mr. Kaps and his son. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"5. KRPC 5.5 provides that '[a] lawyer shall not . . . practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.' [Citation omitted.] In this case, even though the Respondent was suspended from the practice of law on November 5, 1997, he continued to actively practice law. The Respondent argued that he was unaware of the suspension until August 17, 1999, when personally advised of such by Mr. Wood. However, even alter being personally advised of the suspension, the Respondent continued practicing law in violation of KRPC 5.5. Accordingly, the Hearing Panel concludes that the respondent violated KRPC 5.5.

"6. The Respondent also violated KRPC 8.1(b). That rule provides:

'[A] lawyer . . . in connection with a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from [a] disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.'

In this case, the Respondent violated KRPC 8.1(b) by failing to respond to letters from the Disciplinary Administrator's office and by the attorneys assigned to investigate DA7264, DA7430, and DA7490.

a. In DA7264, during Mr. Moriarty's interview of the Respondent and in two letters sent to the respondent, Mr. Moriarty requested that the Respondent provide certain information. The Respondent failed to provide the information.

b. In DA7430, Ms. Snyder sent three letters to the Respondent requesting that the Respondent provide a written response to the letter of complaint. Additionally, during Mr. Guinn's interview of the Respondent, Mr. Guinn asked the Respondent to provide certain documentation and a written response to Ms. Cressman's complaint. The Respondent never provided the documentation or the written response.

c. In DA7490, Mr. Van Petten requested, in writing, that the Respondent provide a written response to Mr. and Mrs. Kaps' letter of complaint. Also, Mr. Cohen on four occasions (three letters and one telephone conversation) requested that the Respondent provide certain documentation, including a written response to Mr. and Mrs. Kaps' letter of complaint. The Respondent did not comply with Mr. Cohen's requests.

"Because the Respondent failed to comply with requests from the Disciplinary Administrator's office and with requests from the attorneys assigned to investigate the complaint, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b).

"7. KRPC 8.4(g) provides that '[i]t is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' [Citation omitted.] The Respondent violated 8.4(g) in DA7264 and DA7730.

a. In DA7264, the Respondent filed a lawsuit in behalf of 89 individuals. However, he had contact with only one of those party plaintiffs. By failing to verify that the remaining 88 individuals wished to be included in the action, the Re-

spondent engaged in conduct that adversely reflects on his fitness to practice law. Therefore, the Hearing Panel concludes that the respondent violated 8.4(g).

b. In DA7730, the Respondent continued to practice law after he was suspended. In this case, the Respondent practiced law when he filed motions and made appearances in connection with the *Frank Carroll, et al., vs. Mike Welch Builder, Inc.,* litigation, when he provided (inadequate) representation of Ms. Peterson, Ms. Johns, and Ms. Audley in connection with their dispute with Mr. Chawla, when he continued to meet with, and promised his legal services to Mr. and Mrs. Kaps, when he filed an Order of Extension of Time to Answer in behalf of Mr. Admire in *Beneficial Mortgage Co. of Kansas vs. Richard R. Admire,* when he initiated the *Brien L. Heinen vs. Nicole R. Williams,* litigation, when he filed a Petition for Divorce in behalf of Wanda Kay Vowell, when he accepted a retainer, agreed to, and performed legal services for Mr. Ghaicepour, when he continued to provide legal advice and services for Mr. and Mrs. Meyers, and when he sent, *via* facsimile, settlement documents to attorney Kenton E. Snow. Because the Respondent continued to practice law after being suspended, the Hearing Panel concludes the Respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of KRPC 8.4(g).

"8.    Kan. Sup. Ct. R. 207(b) provides as follows:
'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

"Kan. Sup. Ct. R. 211(b) provides, in pertinent part:
'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

In this case, the Respondent violated Kan. Sup. Ct. R. 207(b) and Kan. Sup. Ct. R. 211(b) by failing to provide a written response to the complaints in DA7264, DA7430, and DA7490 and by failing to file a written answer in all four cases. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 207(b) and Kan. Sup. Ct. R. 211(b).

"9. Kan. Sup. Ct. R. 218(a) provides:
'In the event any attorney licensed to practice law in Kansas shall hereafter be disbarred or suspended from the practice of law pursuant to these Rules, or shall voluntarily surrender his or her license, such attorney shall forthwith notify in writing each client or person represented by him or her in pending matters, of his or her inability to undertake further representation of such client after the effective date of such order, and shall also notify in writing such client to obtain other counsel in each such matter. As to clients involved in pending litigation or administrative proceedings, such attorney shall also notify in writing the appropriate court or administrative body, along with opposing counsel, of such inability to further proceed, and shall file an appropriate motion to withdraw as counsel of record.'

In this case, the Kansas Supreme Court suspended the Respondent on November 5, 1997. Although the Respondent denies that he received the notice of suspension, the Respondent does not deny that the notice was sent in accordance with the rules. See Kan. Sup. Ct. R. 215(b) and 224(b), and K.S.A. 60-205(b). Then on August 17, 1999, Mr. Wood personally advised the Respondent that he was suspended and could no longer practice law. Following the November 5, 1997, suspension and after being personally advised of the suspension on August 17, 1999, the Respondent failed to notify his clients, opposing clients, and the courts of his suspension as required by Kan. Sup. Ct. R. 218(a). Furthermore, the Respondent did not withdraw as counsel of record in the cases that were pending. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 218(a).

"10. Kan. Sup. Ct. R. 218(c) provides that a '[v]iolation of any suspension order shall constitute grounds for disbarment.' At the hearing on this matter, the Respondent readily admitted that he continued to practice law after the November 5, 1997, suspension. In his defense, he argued that he did not know he was suspended from the practice of law until August 17, 1999, when personally advised of such by Mr. Wood. However, even after being personally admonished by Mr. Wood to refrain from the practice of law on August 17, 1999, the Respondent continued to practice law. Accordingly, the Hearing Panel concludes that Kan. Sup. Ct. R. 218(c) is applicable and in the following section makes a recommendation consistent therewith."

The hearing panel considered both aggravating and mitigating factors in recommending disbarment.

This court has a duty in disciplinary proceedings to examine all the evidence and to determine the judgment to be entered. *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971). The ultimate goal of disciplinary proceedings is to protect the public. *In re Jones*, 252 Kan. 236, 239, 843 P.2d 709 (1992). "Additionally, the disciplinary proceedings give the public confidence that attorneys who violate the Kansas Rules of Professional Conduct (KRPC) are disciplined in a manner which is appropriate, given the specific circumstances of the case." *In re Bailey*, 268 Kan. 63, 65, 986 P.2d 1077 (1999).

In determining the appropriate discipline to be imposed for violating the disciplinary rules, we consider the facts surrounding the violation as well as any aggravating or mitigating circumstances. *State v. Stakes*, 227 Kan. 711, 720, 608 P.2d 997 (1980).

There is clear and convincing evidence that the respondent violated KRPC 1.1 (1999 Kan. Ct. R. Annot. 284) (a lawyer shall

provide competent representation to a client); KRPC 1.3 (1999 Kan. Ct. R. Annot. 294) (a lawyer shall act with reasonable diligence and promptness in representing a client); KRPC 1.4(a) (1999 Kan. Ct. R. Annot. 303) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); KRPC 5.5(a) (1999 Kan. Ct. R. Annot. 386) (a lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction); KRPC 8.1(b) (1999 Kan. Ct. R. Annot. 395) (in connection with a disciplinary matter, a lawyer shall not knowingly fail to respond to a lawful demand for information from a disciplinary authority); KRPC 8.4(g) (1999 Kan. Ct. R. Annot. 399) (it is professional misconduct for a lawyer to engage in any other conduct that adversely reflects on the lawyer's fitness to practice law); Kansas Supreme Court Rules 207(b) (1999 Kan. Ct. R. Annot. 223) and 211(b) (1999 Kan. Ct. R. Annot. 234) (failure to file a written response to a disciplinary complaint and failure to file a written answer); and Kansas Supreme Court Rule 218(a) (1999 Kan. Ct. R. Annot. 250) (failure of attorney to notify client of disbarment or suspension from the practice of law).

IT IS THEREFORE ORDERED that the respondent be and he is hereby disbarred from the practice of law in the state of Kansas and his license and privilege to practice law are hereby revoked.

IT IS FURTHER ORDERED that the Clerk of the Appellate Court shall strike the name of Michael M. Moran from the role of attorneys licensed to practice law in the state of Kansas and that the respondent forthwith shall comply with Supreme Court Rule 218.

IT IS FURTHER ORDERED that the respondent shall pay restitution in the amount of $250 to Diane Cressman, $250 to Karna M. Peterson, and $1,850 to Robert and Betty Kaps.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to the respondent.